NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1254
_____

UNITED STATES OF AMERICA

v.

JOSEPH E. YOKSHAN,

Appellant
_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cr-00314-001)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 26, 2011

Before:  FUENTES, FISHER and NYGAARD, *Circuit Judges*.

(Filed: June 15, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Joseph Yokshan pled guilty to and was convicted of one count of possession with

intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).  As a

condition of his guilty plea, he retained the right to challenge the District Court's

suppression rulings. On appeal he challenges these rulings. For the reasons stated below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

As early as 2004, the Bensalem Township Police Department Special Investigations Unit ("SIU") received information from various sources that Yokshan was engaged in the distribution of oxycodone, specifically Percocet and Oxycontin pills. Informants told SIU officers that they had purchased drugs numerous times from Yokshan's residence in Bensalem, that he sold drugs to both individuals and other dealers, and that he drove a gold Nissan with Pennsylvania Drug Abuse Resistance Education ("D.A.R.E.") license plates.

In December 2007, members of the SIU conducted a controlled buy of oxycodone from an individual known to the SIU ("Person 1"). During questioning, Person 1 informed the SIU of the following: that Yokshan sold large quantities of oxycodone; that he had purchased oxycodone from Yokshan on numerous occasions in the previous six months; and that Yokshan drove to New York to purchase pills in bulk. Person 1 also

identified other individuals who bought drugs from Yokshan, and stated that Yokshan drove a tan Nissan Altima with D.A.R.E. license plates.[1]

Later that month, at the request of the SIU, and while under surveillance, Person 1 participated in a controlled buy at Yokshan's residence ("Controlled Buy"), in which he purchased four oxycodone pills from Yokshan. SIU officers searched Person 1 and his vehicle prior to the Controlled Buy to confirm that he had no drugs. Officers observed Yokshan exit his home and enter Person 1's car. Following a short drive, Person 1 and Yokshan returned. Afterwards, the officers searched Person 1 and recovered four pills.

In June 2008, members of SIU arrested another individual ("Person 2"). He stated the following: that he purchased oxycodone in bulk from Yokshan 60 to 70 times in the previous year; that he had seen Yokshan with as many as 1,000 pills at a time; and that Yokshan sold drugs both in bulk and for individual use. Person 2 also stated that Yokshan drove a champagne-colored Nissan to New York City to buy his drug supply.

On August 11, 2008, another confidential informant told the SIU that he had attempted to buy oxycodone from Yokshan earlier that day, but that Yokshan needed to acquire more. At this point, the SIU sought assistance from the Drug Enforcement Administration ("DEA").

---

[1] SIU officers subsequently verified through surveillance and records from the Bureau of Motor Vehicles that Yokshan owned and drove a gold Nissan Altima bearing Pennsylvania D.A.R.E. license plates.

On August 18, 2008, Special Agent Jeffrey Lauriha of the DEA applied for a warrant authorizing the installation and use of a global positioning system tracking device (a "GPS") to monitor Yokshan's car. The supporting affidavit was based on information supplied by the SIU. A United States Magistrate granted the warrant, which was to expire after 45 days. The GPS was installed on August 21, 2008. On September 30, 2008, Special Agent Lauriha requested and received a 45-day extension of the warrant.

On November 11, 2008, the GPS signaled to law enforcement agents that Yokshan's vehicle was traveling northbound on the New Jersey Turnpike toward New York City. After an approximately two-hour drive from Philadelphia to New York City, the vehicle stopped in New York for ten minutes, and then proceeded back towards Philadelphia, stopping only briefly at a rest-stop on the New Jersey Turnpike.

Based on the new GPS information, SIU officers pulled Yokshan's vehicle over after he exited the Pennsylvania Turnpike. After he was pulled over, Yokshan became extremely agitated; his hands shook, he dropped his wallet when asked for identification, and he stuttered when responding to questions. SIU officers detained Yokshan on suspicion of a felony and took him to the Bensalem Police headquarters. There, he admitted to possessing oxycodone with the intent to sell it. SIU officers then applied for and obtained a search warrant for Yokshan's vehicle. This led to the discovery of 2,000 oxycodone pills.

4

A grand jury indicted Yokshan. He filed two motions to suppress evidence related to the use of the GPS and that arose from his traffic stop and detainment. The District Court denied both motions. Yokshan subsequently entered a guilty plea with the condition that he maintained his right to appeal the District Court's decisions denying suppression.

## II.

The District Court had subject matter jurisdiction over this matter under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. Yokshan appeals the District Court's order denying suppression and seeks a new trial. He offers three bases. First, he asserts that the District Court erred by not suppressing evidence obtained by the GPS because the warrants permitting its installation and continued use were based on stale information. Second, he claims the District Court erred by not suppressing the GPS evidence because the affidavits in support of the warrants contained material assertions and omissions made with reckless disregard for the truth. To support this claim, Yokshan points to six allegedly erroneous assertions or omissions in the affidavits. Third, Yokshan asserts that the District Court erred by not suppressing evidence arising from the *Terry* stop of Yokshan's car because the SIU officers did not have reasonable suspicion. We address each argument in turn.

5

A.

First, Yokshan asserts the District Court erred by denying his suppression motions because the initial warrant for the GPS relied on stale information, and thus lacked probable cause. We are unpersuaded.

We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise plenary review of the District Court's application of the law to those facts. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). We exercise a deferential review when we review a magistrate's initial probable cause determination. *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005).

Staleness is a contextual inquiry and not simply a matter of measuring the age of information contained in an affidavit. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). The appropriateness of the delay in obtaining or seeking a warrant is assessed within the context of the evidence available and the nature of the criminal activity involved. *Id.* "[T]he mere passage of time does not render information in an affidavit stale where . . . the facts suggest that the activity is of a protracted and continuous nature." *United States v. Yusuf*, 461 F.3d 374, 391 (3d Cir. 2006) (internal citations omitted). Narcotics investigations are often necessarily protracted in nature and, as such, rely on older information. *See United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) ("We further observed that protracted and continuous activity is inherent in a large scale narcotics operation." (internal citations omitted)); *see*, *e.g.*, *Ritter*, 416 F.3d 256, 263

(affirming finding of probable cause despite seven month delay between visual confirmation of drug-related activity and issuing of warrant).

Here, the District Court did not rely on stale evidence in denying Yokshan's motion to suppress the GPS evidence. The evidence was corroborated by other aspects of the investigation, and the fact that it was an investigation into a continuing drug operation, contribute to showing that the evidence was not stale.

B.

Second, Yokshan argues that the District Court erred by failing to suppress the GPS evidence because the affidavits in support of probable cause contained several material omissions or assertions which were made with "reckless disregard for the truth." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000) (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). "[A] district court's resolution of the question whether a particular false statement in a warrant affidavit was made with reckless disregard for the truth is subject to reversal only upon a finding of clear error." *United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011). Yokshan failed to meet his burden.

*Franks* established a two-part test. First, a criminal defendant must make a "substantial preliminary showing" to overcome the presumption that the affidavit supporting the search warrant is valid. *Yusuf* 461 F.3d at 383. Only if this initial showing is made is a defendant entitled to a *Franks* hearing. *Id.* To make the initial showing, a defendant must allege with specificity what was false in the affidavit, must

provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information from the affidavit is insufficient to support a finding of probable cause. *Franks*, 438 U.S. at 171-72. Yokshan failed to make this threshold showing for two reasons. First, he failed to offer sufficient evidence alleging culpable conduct. Second, even had the District Court inserted or excised the specific statements that Yokshan requested, the affidavit would still have contained sufficient content to support a finding of probable cause.

The District Court did not err by denying Yokshan's motion to suppress evidence obtained from the GPS as there was sufficient probable cause to support the warrant.

C.

Third, Yokshan argues that the District Court erred by not suppressing evidence arising from the *Terry* stop because the SIU officers did not have reasonable suspicion to justify the stop. We disagree.

Pursuant to *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). We exercise *de novo* review over the District Court's finding of reasonable suspicion for a *Terry* stop, but review the underlying findings of fact for clear error. *United States v. Robertson*, 305 F.3d 164, 167-68 (3d Cir. 2002). To determine whether reasonable suspicion exists, we must consider the "totality of the circumstances-

8

the whole picture." *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (internal quotation marks and citations omitted).

Here, police independently corroborated statements from informants, successfully executed a Controlled Buy, and had GPS information. The GPS showed a four-hour round trip between Pennsylvania and New York for a ten-minute stop in New York.

This, coupled with statements from multiple informants that Yokshan frequently traveled to New York to purchase narcotics, provided sufficient basis to perform a *Terry* stop. The District Court did not err by denying Yokshan's motion to suppress.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.